NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MONICA MCQUEEN, individually and on behalf of all others similarly situated, | : <br> : <br> : **Civil Action No. 12-6674 (SRC)** |
| Plaintiff, | : <br> : |
| v. | : **OPINION** <br> : |
| BMW OF NORTH AMERICA, LLC, and BAYERISCHE MOTORENWEKE AKTIENGESELLSCHAFT, | : <br> : <br> : <br> : |
| Defendants. | : <br> : |

**CHESLER**, District Judge

This matter comes before the Court by way of defendant BMW of North America, LLC ("BMW NA")'s motion to dismiss the First Amended Class Action Complaint ("the Complaint"). This Court has jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) and (6), as this is a class action in which the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, and in which at least one member of the putative class is a citizen of a State other than that of defendant BMW NA, and because defendant BMW AG is a subject of a foreign state. This Court also has supplemental jurisdiction over the related state law claims under 28 U.S.C. § 1367. For the reasons expressed below, defendant BMW NA's motion to dismiss will be granted. Because the motion to dismiss the Complaint for failure to state a claim is granted, BMW NA's motion to dismiss the class allegations is denied for mootness.

**I.     BACKGROUND**

1

Monica McQueen ("Plaintiff") purchased a 2004 BMW 745i from DeLuxe Auto Sales in Newark, New Jersey at some time in 2008. The 745i is part of the line of "7-Series" BMWs, purported to be BMW's "flagship line." Plaintiff alleges that the entire 7-Series line of vehicles, with model numbers 2002-2008 ("the Vehicles"), is defective. The alleged defect arises from the Vehicles' unique integration of the Bosch Shift-by-Wire electronically controlled transmission system with a common transmission manufactured by ZF. The Vehicles are also divided into two categories: those which are also equipped with the Comfort Access System ("CAS") feature—which enables the driver to start the Vehicle by pressing the "Start/Stop" button without inserting the key into the ignition—and those without the CAS feature.

The defect allegedly manifests by causing the Vehicle to shift into neutral rather than park, contrary to the operator's intentions. This can result in the Vehicles rolling away, potentially causing damage to the Vehicle itself, other property, or individuals. After receiving complaints, the National Highway Traffic Safety Administration ("NHTSA") opened an investigation into the BMW 7-Series vehicles. The NHTSA found that a defect existed in those Vehicles that were equipped with the CAS feature, but was unable to identify a similar defect in the non-CAS equipped Vehicles.

Plaintiff's automobile is one of the Vehicles not equipped with the CAS feature. Plaintiff alleges that her vehicle has rolled away as a result of the defect at least five times; the most recent incident allegedly resulted in her vehicle colliding with her garage door, damaging both the vehicle and the garage.[1] According to Plaintiff, the defect was not disclosed by Defendants at any time prior to their issuing a recall on the CAS-equipped Vehicles, despite the fact that Defendants supposedly knew that all the 7-Series Vehicles were affected.

---

[1] Plaintiff does not allege that she has repaired the damage or incurred any out-of-pocket costs.

Plaintiff brought the instant suit on her own behalf and as a putative class action, alleging violations of the New Jersey Consumer Fraud Act ("the NJCFA"), N.J.S.A. 56:8-2, and the Magnuson-Moss Warranty Act ("the MMWA"), 15 U.S.C. § 2301, *et seq.*, breach of the implied warranty of merchantability, negligence, negligent misrepresentation, and fraud. Defendant BMW NA has yet to answer the Complaint, instead moving to: 1) dismiss the Complaint for lack of standing; 2) "refer"—that is, dismiss—the suit to the NHTSA, or alternatively adopt its supposed findings of fact; 3) dismiss the allegations for failure to state a claim on which relief can be granted; and 4) in the alternative, dismiss the class action allegations.

## II.     STANDARD OF REVIEW

Pursuant to Federal Rules 12(b)(1) and 12(b)(6), this Court must dismiss a complaint if it lacks subject matter jurisdiction to hear a claim, and if the complaint fails to state a claim upon which relief can be granted.

As standing is a jurisdictional matter, "a motion to dismiss for want of standing is also properly brought pursuant to Rule 12(b)(1)." *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007). "The party invoking federal jurisdiction bears the burden of establishing the elements of standing, and 'each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation.'" *FOCUS v. Allegheny Cnty. Court of Common Pleas*, 75 F.3d 834, 838 (3d Cir. 1996) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). In order to establish Article III standing, a plaintiff must allege an injury that is "concrete, particularized and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Clapper v. Amnesty International USA*, 133 S.Ct. 1138, 1146 (2013).

Rule 12(b)(6) permits a court to dismiss a complaint for failure to state a claim upon which relief can be granted. When considering a Rule 12(b)(6) motion, the Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir.1997). The Court's inquiry, however, "is not whether plaintiffs will ultimately prevail in a trial on the merits, but whether they should be afforded an opportunity to offer evidence in support of their claims." *In re Rockefeller Ctr. Prop., Inc.*, 311 F.3d 198, 215 (3d Cir.2002).

However, the Supreme Court has held that "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 545 (2007). Thus, the assertions in the complaint must be enough to "state a claim to relief that is plausible on its face." *Id.* at 570. That is to say, the facts alleged must allow "the court to draw the reasonable inference that the defendant is liable for the conduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009); *see also Phillips v. County of Allegheny*, 515 F.3d 224, 234–35 (3d Cir.2008) (In order to survive a motion to dismiss, the factual allegations in a complaint must "raise a reasonable expectation that discovery will reveal evidence of the necessary element," thereby justifying the advancement of "the case beyond the pleadings to the next stage of litigation.").

When assessing a complaint's sufficiency, the Court must distinguish factual contentions—which allege behavior on the part of the defendant that, if true, would satisfy one or more elements of the claim asserted—from "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 129 S.Ct. at 1949. Furthermore, despite the presumption of veracity given to factual allegations on

a motion to dismiss, a Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 1950. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.*

**III.   DISCUSSION**

   **A. Article III Standing**

Defendant BMW NA argues that Plaintiff lacks Article III standing because she has not alleged any loss or injury.[2] Relying on *Lujan*, BMW NA argues that because Plaintiff has not yet incurred any out-of-pocket losses from any repairs to her damaged property, any injury she may have suffered remains conjectural and does not satisfy the 'imminence' requirement of the standing analysis.

However, BMW NA's argument distorts the standing analysis. The notion that the Plaintiff here has not suffered an injury until she has paid for repairs is as nonsensical as suggesting that a homeowner whose house has been intentionally burned down has not suffered an injury until she has rebuilt her home. Here, Plaintiff has a concrete, personal injury: her car and her garage have been damaged; the fact that she has not yet paid to have them repaired is of no real consequence. Additionally, Plaintiff has an allegedly defective vehicle when she was under the impression that it was functioning properly. As for the other previously noted requirements, the damage Plaintiff has suffered is causally connected to defendant BMW NA's alleged failure to disclose the defect in the Vehicle, and can be redressed by a favorable decision from this Court. Had BMW NA disclosed the defect before Plaintiff's purchase of the vehicle, then Plaintiff would have had an opportunity to repair the defect, or to purchase an alternative

---

[2] BMW NA raises this argument again as part of its defense against each of Plaintiff's claims. However, as the Court rejects the argument here, it will not be discussed below.

automobile. If the suit is successful, Plaintiff will be compensated for the damages she has sustained. Thus, Plaintiff has Article III standing to pursue her claim before this Court.[3]

### B. The Doctrine of Primary Jurisdiction

Defendant BMW NA also seeks to invoke the primary jurisdiction doctrine in an effort to dispose of the instant claims. BMW NA asks the Court to either: 1) adopt the finding of the NHTSA that no defect exists in the Vehicles that are not equipped with the CAS feature, such as the Plaintiff's; or 2) alternatively, refer[4] the case to the NHTSA's jurisdiction over such issues for further consideration.

The doctrine of primary jurisdiction "applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body[.]" *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 64 (1956). There is no fixed formula for determining when to apply the doctrine, but the two primary questions for a Court to consider are whether some desirable uniformity in the decisions between administrative agencies and the courts must be maintained, and if expert and specialized knowledge of the agencies ought to be utilized. *Id*. That is to say, where a case raises issues of fact not within the conventional experience of judges, or in which administrative discretion is concerned, Congressionally created agencies should not be ignored. *Id.*

In the Third Circuit, courts use a four-factor analysis for determining whether to refer a case to an agency. The factors are:

---

[3] BMW NA cites to a case from a sister D.N.J. court which dismissed similar claims on standing grounds, where the alleged defect manifested after the expiration of the vehicle's warranty. *See Chan v. Daimler AG*, No. 11–5391, 2012 WL 5827448 (D.N.J. Nov. 9, 2012) (striking down substantively similar claims on standing grounds, and citing other similar cases from the D.N.J. doing the same). This Court is not persuaded by this case or the cases cited therein, and feels that this point is more appropriately addressed under a 12(b)(6) review of whether a Plaintiff has stated a claim for which relief may be granted, rather than on standing principles.

[4] A referral is merely a term used to describe a court dismissing a complaint without prejudice, so that the administrative agency might have an opportunity to consider the issues first.

6

> (1) Whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise; (2) Whether the question at issue is particularly within the agency's discretion; (3) Whether there exists a substantial danger of inconsistent rulings; and (4) Whether a prior application to the agency has been made.

*Baykeeper v. NL Industries, Inc.*, 660 F.3d 686, 691 (3d Cir. 2011) (reversing the district court's referral) (quoting *Global Naps, Inc. v. Bell Atlantic-New Jersey, Inc.*, 287 F.Supp.2d 532, 549 (D.N.J. 2003)).

Ironically, BMW NA relies on the district court's analysis that the Third Circuit overturned in *Baykeeper*, along with several other cases where referrals were granted (though only one, in its supplemental brief, relates to vehicle defects and the NHTSA). BMW NA argues, without much explanation, that these four factors all support referral in this case.

Plaintiff argues that BMW NA mischaracterizes the NHTSA's findings. She argues that not finding a defect is not equivalent to finding that there is no defect. Plaintiff also points out that district courts have held that NHTSA reports were merely findings to be given to the jury to weigh along with the rest of the evidence. Plaintiff also argues that the primary jurisdiction doctrine is only very rarely used by courts to refer cases away to the NHTSA, especially where the claims are based on consumer fraud protection and breach of warranty. Indeed, the authorizing statute for the NHTSA explicitly preserves court-based consumer warranty and common law remedies. Furthermore, Plaintiff argues that the four *Baykeeper* factors all point towards denying referral.

This Court will now consider the four *Baykeeper* factors to determine whether a referral should be made to the NHTSA. As to the first factor, the questions in this case are squarely within the conventional experience of judges and the court systems. Moreover, answering these

questions does not require the expert considerations of the NHTSA. At its heart, this is merely a products liability and consumer fraud case, with which the courts are all too familiar. Thus, this factor weighs in favor of denying referral.

The second factor also weighs in favor of not referring the case. Nothing about the plaintiff's suit alleges any violation of NHTSA standards, and neither product liability nor consumer fraud protection is in the sole domain of the NHTSA. Furthermore, as Plaintiff notes, common law and warranty remedies have been explicitly preserved by the authorizing statute, indicating that this case falls squarely outside the domain of the NHTSA. *See* 49 U.S.C. § 30103(d), (e).

Despite BMW NA's assertion, the third factor also weighs in favor of denial. There is no danger here of inconsistent rulings. As plaintiff argues, the NHTSA did not in fact make a determination about the defectiveness of the Vehicles which are not equipped with the CAS feature. BMW NA's logic is flawed. To accept its argument would be the same as accepting the conclusion that there are no four-leafed clovers in a giant field simply because an individual was not able to find one.

The fourth factor is somewhat more unclear than the other three. It is arguable that a prior application to the agency has been made, but not definitively so. It is true, for example, that the non-CAS vehicles were inspected by the NHTSA. However, the NHTSA does not have a mechanism by which Plaintiff could be awarded damages, which pushes this factor in Plaintiff's favor. Even should this factor weigh in favor of BMW NA, though, the Third Circuit states, "this single factor cannot outweigh the others that disfavor abstention on primary jurisdiction grounds." *Baykeeper*, 660 F.3d at 692.

Furthermore, Plaintiff correctly points out that cases like the one at bar are only very rarely referred to the NHTSA, and those which are dismissed are usually dismissed because of an ongoing investigation by the NHTSA. As such, this Court declines to refer the instant case to the NHTSA and further declines to adopt the supposed factual finding made regarding the non-CAS equipped Vehicles.

### C. Count One: New Jersey Consumer Fraud Act

Plaintiff alleges that Defendants have violated the NJCFA. The NJCFA provides, in relevant part, that:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice[.]

N.J.S.A § 56:9-2. A claim under the Act has three elements: 1) an unlawful practice; 2) an ascertainable loss on the part of the Plaintiff; and 3) a causal connection between the first two. *Gonzalez v. Wilshire Credit Corp.*, 207 N.J. 557, 567 (2011).

An unlawful practice under the Act can fall into three categories: affirmative acts, knowing omissions, and regulatory violations. *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 16 (1994). Intent to deceive is not required when an affirmative act is being challenged; however, intent *is* required where, as here, the alleged conduct consists of a knowing concealment, suppression, or omission of a material fact. *Gennari v. Weichert Co. Realtors*, 149 N.J. 582, 605 (1997). An ascertainable loss, according to the New Jersey Courts, is an out-of-pocket loss or a demonstration of loss in value that can be quantified and measured. *Thiedemann v. Mercedes-*

*Benz USA, LLC*, 183 N.J. 234, 248-49 (2005). Finally, a private plaintiff may only bring suit under the NJCFA if their ascertainable loss comes "as a result of" a defendant's actions. *Int'l Union of Operating Eng'rs Local #68 v. Merck & Co.*, 192 N.J. 372, 392 (2007). That is to say, a plaintiff must demonstrate a causal nexus between the fraudulent act and the loss. *Id*.

Here, Plaintiff alleges that Defendants violated the NJCFA by knowingly omitting the fact that their Vehicles suffered from the aforementioned defect. This unlawful practice, she alleges, is causally connected to the ascertainable loss of the damage to her vehicle and garage because without BMW's fraudulent actions these damages would never have occurred.

Defendant BMW NA attacks this claim on several grounds. Initially, it argues that the Complaint does not satisfy the heightened pleading standards imposed by Federal Rule of Civil Procedure 9(b). It also argues that Plaintiff has not suffered an ascertainable loss because she has not paid for any repairs,[5] and that there is no causal connection between any loss on Plaintiff's part and BMW NA's conduct.[6]

Rule 9(b) requires that "in all averments of fraud or mistake, the circumstances constituting the fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). The purpose of the heightened pleading standard is to require the plaintiff to "state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which it is charged." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir.2007); *see also Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir.1984). Furthermore, Rule 9(b)'s requirements are relaxed in instances where the factual

---

[5] As this argument was addressed above with regard to Article III standing, this Court will not delve once more into the matter. Suffice it to say that the New Jersey Supreme Court has rejected this argument before, pointing out that such an interpretation of N.J.S.A. 56:8-19 "runs contrary to the Act's remedial purpose." *Cox*, 138 N.J. at 22. "Traditionally, to demonstrate a loss, a victim must simply provide an estimate of damages, calculated within a reasonable degree of certainty. The victim is not required to spend the money for the repairs before becoming entitled to press a claim." *Id.*

[6] As Plaintiff's NJCFA claim will be dismissed, this Court will refrain from addressing this argument on mootness grounds.

information required to satisfy the rule is solely within the knowledge of the defendant. *See In re Rockefeller Center Properties, Inc. Securities Litigation*, 311 F.3d 198, 216 (3d Cir. 2002). NJCFA claims are subject to the heightened pleading standards of Rule 9(b). *Frederico* at 200.

BMW NA first argues that Plaintiff does not "identify *who* at BMW NA knew of the purported problems with electronically controlled transmission; *what* he or she knew; *when* he or she knew it; and *how* he or she knew it." Def. Br. 11. They point to the oft-quoted explanation that Rule 9(b) requires "all of the essential factual background that would accompany the first paragraph of any newspaper story- that is, the who, what, when, where and how of the events at issue." *In re Suprema Specialties. Inc., Sec. Litig.*, 438 F.3d 256, 276-77 (3d Cir. 2006).

This Court agrees that the Plaintiff has not met the burden required by Rule 9(b). Plaintiff merely asserts in a conclusory manner that BMW was aware of the alleged defect at the time that she purchased her vehicle and omitted to disclose that information. The Complaint does not include any information as to when, before the time of the purchase of her vehicle, BMW learned of the defect, how it gained that knowledge, who at the company possessed the knowledge, and when or how the ultimate decision was made not to disclose this supposed knowledge of the defect from customers. This information is required to meet the Rule 9(b) standard. *Id*. Plaintiff merely points to the complaints received by BMW and the NHTSA as proof that BMW was aware of the defect, without providing any additional information.

More importantly, Plaintiff has not pled sufficient colorable information to plausibly establish that a defect even exists in the Vehicles. Throughout her Complaint, Plaintiff merely identifies the *effects* of the alleged defect: namely that the Vehicle shifts into neutral contrary to operator command. There is no identification as to what precisely the defect is, other than a conclusory allegation that the transmission system is defective. In support of this notion, Plaintiff

points to the various complaints received by BMW and the NHTSA. In her Complaint, she alleges that the NHTSA ultimately "reviewed more than 50 complaints about the above-described alleged defect." FAC ¶ 29. These complaints amount to anecdotal reports of similar effects, not factual support that the entire line of 7-Series vehicles is defective. Furthermore, "of the 52 reports alleging vehicle rollaway, only 20 of these involved Vehicles with CAS. The other 32 were non-CAS Vehicles." FAC ¶ 53. Of Plaintiff's own admission, there were only 32 complaints involving non-CAS equipped vehicles like the Plaintiff's, out of a total pool of approximately 122,000 Vehicles. This amounts to 0.026% of all Vehicles.

Put simply, customer complaints do not constitute *per se* knowledge on the part of BMW that a defect exists in the Vehicles. The notion that Defendants "have been and remain on notice of the Vehicles' defective and dangerous electronically controlled transmission system" is nothing more than a legal conclusion, insufficient under *Iqbal* and *Twombly* to constitute the required knowledge of the defect required by the NJCFA. Nor can such a low rate of reports constitute a plausible allegation that BMW must have known of the alleged defect. As such, Plaintiff's claims do not satisfy the pleading standard articulated in *Twombly* and *Iqbal*. For this and the reasons previously mentioned, Plaintiff's NJCFA claim is dismissed without prejudice, and Plaintiff will be given leave to amend her Complaint to include any additional factual allegations.

### D. Counts Two and Three: Warranty Claims

Plaintiff alleges that BMW NA violated the MMWA and the implied warranty of merchantability by failing to disclose the fact that her vehicle was defective. BMW NA defends both of these claims by arguing that the warranty covering Plaintiff's vehicle had expired, thus barring any claim for breach.

The MMWA provides federal minimum standards for sellers who choose to provide written warranties. 15 U.S.C. §§2303(a), 2304. The general rule "is that an express warranty does not cover repairs made after the applicable time has elapsed." *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3dd 604 (3d Cir. 1995). This rule applies regardless of whether the defect existed prior to the warranty's expiration. *Id.* At the time of initial sale, Plaintiff's vehicle came with a New Passenger Vehicle Limited Warranty ("the Warranty"),[7] which covered "defects in materials or workmanship." Sup. Dalton. Decl., Ex. 1. Under the heading "Warranty Coverage," it states, "To obtain service under this warranty, the vehicle must be brought, upon discovery of a defect in material or workmanship," to an authorized BMW center for repairs. *Id*. The Warranty was limited to a period of "48 months or 50,000 miles, whichever occurs first." *Id.* Also included was the notice that "THE DURATION OF ANY IMPLIED WARRANTIES, INCLUDING THE IMPLIED WARRANTY OF MERCHANTABILITY, IS LIMITED TO THE DURATION OF THE EXPRESS WARRANTIES HEREIN." *Id*.

Significantly, Plaintiff's Complaint contains no allegations that Plaintiff brought the vehicle to a BMW center within 48 months or 50,000 miles of purchase. Thus, by the explicit terms of the Warranty, Plaintiff would appear to have no claim. Indeed, she seems to concede that her claims are outside of the time/mileage limitations by arguing in her brief that they are unconscionable. This is so, she argues, because Defendants knew about the alleged defect at the time the Warranty was acquired. But this Court agrees with the Court in *Alban v. BMW of North America, LLC*, No. 09–5398, 2010 WL 3636253 (D.N.J. 2010), where Judge Debevoise pointed

---

[7] Plaintiff did not attach the warranty agreement as an exhibit to her Complaint. Indeed, Plaintiff claims that the warranty is not properly before the Court, as it was neither explicitly relied upon, nor integral to the Plaintiff's Complaint. This argument does not stand. Plaintiff's MMWA claim is premised on the terms of the warranty. Therefore, the Court may consider the document without converting BMW NA's Motion to Dismiss into a request for summary judgment. *See In re Burlington Coat Factory Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (Although, "[a]s a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings . . . a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.") (internal citations and quotations omitted).

out that this same argument failed to persuade the Court of Appeals for the Second Circuit in *Abraham v. Volkswagen of America Inc.*, 795 F.2d 238, 250 (2d Cir. 1986) (holding that a plaintiff cannot maintain a breach of warranty claim for a defect that was not discovered prior to the expiration of his warranty by alleging that the manufacturer knew of that defect before the warranty expired).[8] In *Abraham*, the Second Circuit stated:

> [V]irtually all product failures discovered in automobiles after expiration of the warranty can be attributed to a "latent defect" that existed at the time of sale or during the term of the warranty. All parts will wear out sooner or later and thus have a limited effective life. Manufacturers always have knowledge regarding the effective life of particular parts and the likelihood of their failing within a particular period of time. Such knowledge is easily demonstrated by the fact that manufacturers must predict rates of failure of particular parts in order to price warranties and thus can always be said to "know" that many parts will fail after the warranty period has expired. A rule that would make failure of a part actionable based on such "knowledge" would render meaningless time/mileage limitations in warranty coverage.

*Abraham*, 795 F.2d at 250. The opinion in *Abraham* was central to the decision in *Duquesne*, which provided the general rule that we follow here today. *See Dewey v. Volkswagen AG*, 558 F.Supp.2d 505, 519-20 (D.N.J. 2008) ("Because the above-quoted passage was central to *Abraham*'s holding, this Court must assume that the Third Circuit was aware of its implications" when it [relied on] that case in *Duquesne*.). Plaintiff's argument here is merely an attempt to artfully plead that which has been rejected by *Duquesne* and *Abraham*.

Furthermore, New Jersey law allows for limitations on the implied warranty of merchantability. *See* N.J.S.A. 12A:2-316. As mentioned above, BMW NA limited the duration of the implied warranty to the terms of the express warranty: 48 months or 50,000 miles, whichever came first. The same deficiencies that plague the Plaintiff's MMWA claim are present here as well. As Plaintiff has made no valid argument that would allow this Court to look past

---

[8] As discussed on pages 11-12, *supra*, this Court has concluded that Plaintiff's allegations that Defendants knew or should have known are insufficient to pass muster under *Iqbal* and *Twombly*, even if the Court were willing to consider these contentions in the context of an "unconscionability" argument.

the terms and restrictions of the Warranty, the rule described in *Duquesne* applies, and Plaintiff's claims for violation of the MMWA and breach of the implied warranty of merchantability are hereby dismissed without prejudice. Plaintiff will be given leave to amend her Complaint to remedy the defects discussed herein.

### E.  Counts Four, Five, and Six: Negligence, Negligent Misrepresentation, and Fraud

Plaintiff's negligence claim is based on the allegation that Defendants "owed a duty of reasonable care to the Plaintiff and the other Class members, who, as buyers and/or lessees of the Vehicles, were foreseeable victims of Defendants' negligence in . . . selling . . . the Vehicles with defective electronically controlled transmission systems." FAC ¶ 106. According to Plaintiff, "[b]ut for Defendants' negligence . . . the Plaintiff and the other Class members would not have suffered damages as a result of those defective electronically controlled transmission systems." FAC ¶ 108. She further alleges that the Defendants' breach was the proximate cause of her injuries.

Under the fifth count, negligent misrepresentation, Plaintiff alleges that "Defendants' negligence resulted in BMW's negligent misrepresentations about the quality and fitness of the Vehicles and, in particular, their defective electronically controlled transmission systems." FAC ¶ 114. She then claims that both she and other Class members reasonably believed and detrimentally relied upon these misrepresentations.

Under the sixth count, fraud, Plaintiff alleges that "Defendants made numerous misrepresentations in print, radio, television, and Internet advertising that the Vehicles' electronically controlled transmission systems . . . would automatically place the Vehicles in Park when the "Start/Stop" ignition button was pressed turning the engine off and to not cause dangerous rollaways."  FAC ¶ 119. Then, "[u]pon information and belief," it is alleged that the

Defendants "knew that these representations were false" and that the Defendants purposefully failed to disclose this falsity in order to induce reliance on the part of the Plaintiff and others. FAC ¶ 120-122.

Plaintiff provides no factual support for why the Defendants' behavior was negligent, or how the specifically alleged duties of care were breached by the actions so stated. Nor does Plaintiff identify precisely which representations were made, when they were made, or to whom they were made. Finally, Plaintiff provides no colorable factual information that would make it plausible to believe that Defendants made any of these alleged representations with the knowledge of their falsity or with the requisite intent to induce reliance on Plaintiff's part.

Such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to meet the plausibility pleading standard. *Iqbal*, 129 S.Ct. at 1949. Plaintiff's Complaint must contain enough colorable factual support to state a claim to relief that is plausible on its face. *Id*. (citing *Twombly*, 550 U.S. at 570). As it is here, these conclusory allegations are insufficient to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* As such, Plaintiff's last three claims shall be dismissed without prejudice.

## IV. Conclusion

For the reasons set forth above, BMW NA's Motion to Dismiss is granted. All six of Plaintiff's claims are dismissed without prejudice. Plaintiff may submit a Second Amended Complaint curing, if she is able to do so, the defects in those claims within 30 days of this ruling. An appropriate Order implementing this Opinion will follow.

                                        <u>s/Stanley R. Chesler</u>
                                        STANLEY R. CHESLER
Dated August 29, 2013                United States District Judge